

EOD
02/10/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GEORGE EDWARD GROVES, M.D. | § | Case No. 05-10090 |
| 8013 Torrey Pines Cir. | § | |
| Beaumont, TX 77707 | § | |
| xxx-xx-9925 | § | |
| | § | |
| Debtor | § | Chapter 13 |

## MEMORANDUM OF DECISION[1]

This matter is before the Court to consider confirmation of the Amended Chapter 13 Plan (the "Fourth Amended Plan") filed on December 15, 2005, by the Debtor, George Edward Groves, M.D. ("Debtor"), in the above-referenced Chapter 13 case. Ronald E. Stadtmueller, Chapter 13 Trustee, objected to the confirmation of the Plan on the grounds that, among other deficiencies, the Debtor is not applying all of his projected disposable income for the first three years of the Plan, in contravention of 11 U.S.C. §1325(b)(1)(B).[2] At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] All of the other confirmation objections raised by the Trustee essentially relate to the disposable income analysis, except for the objection that the Debtor will not be able to make the payments under the plan as required by §1325(a)(6). Such objection is overruled.

Court.[3]

## Background

The Debtor, George Edward Groves, M.D., is a practicing psychiatrist who filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on January 25, 2005. The Debtor, who is married but whose wife did not join in the voluntary petition, seeks to confirm his Fourth Amended Chapter 13 Plan, filed on December 15, 2005, which proposes a monthly payment of $4,459.69 for a period of seven (7) months, a payment of $3,300.00 for five (5) months, and a monthly payment of $4,577.73 for the succeeding forty-four (44) months, for a total gross sum of $249,137.95. The proposed plan primarily addresses secured and unsecured priority indebtedness owing to the Internal Revenue Service, with a distribution of $42,820.51 toward the satisfaction of allowed unsecured claims totaling $291,414.39, for a projected dividend of 14.69% to unsecured creditors.

The Chapter 13 Trustee objected to confirmation of the proposed plan. Specifically, the Trustee objects that the certain proposed expenses are excessive or otherwise not reasonably necessary for the maintenance and support of the Debtor or his dependents; that the Debtor has failed to properly account for the income and expenses of his non-debtor spouse, and that, as a result, the Debtor is not utilizing all of his projected

---

[3] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

disposable income in the first 36 months to fund the plan in violation of 11 U.S.C. §1325(b)(1)(B). Financial issues involving the allocation of household expenditures also impact whether the Debtor's plan has been proposed in good faith.

## Discussion

This Court has previously recognized that, in applying §1325(b) of the Bankruptcy Code,[4] the definition of "disposable income" demands a delineation between those expenditures which are "reasonably necessary" from those which are not. *In re Johnson*, 241 B.R. 394 (Bankr. E.D. Tex. 1999). As the Court observed at that time:

[t]he disposable income test is designed to balance the interest of creditors

---

[4] In the context of considering confirmation of a Chapter 13 plan, 11 U.S.C. §1325(b) provides that:
>   (b)(1) [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>   (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>   (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
>
>   (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended —
>   (A) for the maintenance or support of the debtor or a dependent of the debtor. . . and
>   (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

> with the interest of the debtor in obtaining a fresh start. Thus the proper methodology is to aggregate all expenses projected by the debtor which [are] somewhat more discretionary in nature, and any excessive amounts in the relatively nondiscretionary line items such as food, utilities, housing, and health expenses, to quantify a sum which, for lack of a better term, will be called "discretionary spending."...If the discretionary expenses in the aggregate allow the Debtors to exceed their basic needs, including a reasonable reserve for recreation and exigencies (the reasonable "cushion"), then their plan cannot be confirmed.

*Id.* at 399 (quoting *In re Gonzales*, 157 B.R. 604, 608-09 (Bankr. E.D. Mich. 1993)). Once a disposable income objection has been properly lodged, a Chapter 13 debtor, as the plan proponent, assumes the burden to demonstrate by a preponderance of the evidence that all of his or her projected disposable income for the first three years of the debtor's plan will be applied to the payments to be made under the plan.

Though an examination of the four different budgets filed by the Debtor during the course of this case reveals that the Debtor has finally winnowed his projected expenditures down to an acceptable level in response to the objections and inquiries of the Trustee, there is little doubt that the Debtor has failed to tender all of his disposable income which he has realized since the inception of the case. Of particular note is the Debtor's failure to tender post-petition tax deposits to the IRS as contemplated by his budget and the monthly dues assessment of $297 which the Debtor paid throughout 2005 to his country club. Yet, despite such shortcomings, the Court finds it unnecessary to engage in a detailed discussion of the evolution of the Debtor's budget and its impact

upon the disposable income analysis since, of greater import, is the impact of financial issues regarding the Debtor's non-filing spouse upon the Debtor's good faith in proposing the plan and in his calculation of disposable income.

There is a widespread consensus among bankruptcy courts that a non-debtor spouse's income and expenses are to be taken into consideration in determining whether a debtor has proposed a Chapter 13 plan in good faith[5] and whether all of a Chapter 13 debtor's disposable income is being devoted to the proposed plan. *Mowen v. Hull (In re Hull)*, 251 B.R. 726 (B.A.P. 9th Cir. 2000); *Pobiner v. Educ. Credit Mgmt. Corp. (In re Pobiner)*, 309 B.R. 405 (Bankr. E.D.N.Y. 2004); *In re Williamson*, 296 B.R. 760 (Bankr. N.D. Ill. 2003); *In re Carpenter*, 318 B.R. 645 (Bankr. E.D. Va. 2003); *In re Daniel*, 260 B.R. 763 (Bankr. E.D. Va. 2001); *In re Bottelberghe*, 253 B.R. 256 (Bankr. D. Minn. 2000); *In re McNichols*, 249 B.R. 160 (Bankr. N.D. Ill. 2000); *In re Bottorff*, 232 B.R. 171 (Bankr. W.D. Mo. 1999); *In re Ehret*, 238 B.R. 85 (Bankr. D.N.J. 1999); *In re Carter*, 205 B.R. 733 (Bankr. E.D. Pa. 1996); *In re Cardillo*, 170 B.R. 490 (Bankr. D.N.H. 1994); *In re Belt*, 106 B.R. 553 (Bankr. N.D. Ind. 1989). As one of these courts

---

[5] The Fifth Circuit has held that "the phrase 'proposed in good faith' must be viewed in light of the totality of the circumstances surrounding the confection of a given Chapter 13 plan." *Public Fin. Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983). "Totality of the circumstances" means just that: "...an examination of all of the facts in order to determine the bona fides of the debtor." *In re Chaffin*, 816 F.2d 1070, 1074 (5th Cir. 1987), *as subsequently modified*, 836 F.2d 215 (5th Cir. 1988). Thus, "[t]he proper focus is whether the debtors in this case are making a reasonable proposal consistent with the realities of the distressful economic situation in which they found themselves and the Court exercises considerable discretion in assessing whether the plan as proposed constitutes a reasonable repayment effort or [is] an attempt to abuse the spirit of the Bankruptcy Code." *Public Fin.*, 712 F.2d at 221 (internal quotations omitted).

explained,

> Because [the] debtor is a part of a family unit, the court considers the total family income and expenses in calculating "disposable income" under Code §1325(b)(2) as well as in the totality of circumstances good faith test. The rationale behind including non-debtor income in debtor's individual plan under the disposable income test is simple: a portion of the non-debtor spouse's income is likely to be applied to the basic needs of debtor and to potentially increase the share of debtor's own income that is not reasonably necessary for support. In other words, it is fair that the non-debtor spouse's income should be considered in calculating the appropriate chapter 13 plan payment.

*In re Carpenter*, 318 B.R. at 647 (internal quotations omitted).[6]

While the fulfillment of this requirement does not necessarily result in the actual dedication of all excess family income, including that of the non-debtor spouse, to the proposed plan, nor does it preclude a non-debtor spouse from utilizing non-estate earnings to address any debts which that spouse may have incurred, see, e.g., *In re Nahat*, 278 B.R. 108 (Bankr. N.D. Tex. 2002), this Court believes that, in order to satisfy the

---

[6] This requirement is reflected by the fact that every Chapter 13 debtor is required to file, among other documents, ". . . a schedule of current income and expenditures . . . prepared as prescribed by the appropriate Official Forms." FED. R. BANKR. P. 1007(b)(1). The instructions to the Official Form for Schedule I — Current Income of Individual Debtor(s) provides:

> The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 12 or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed."

Additionally, the instructions to the Official Form for Schedule J — Current Expenditures of Individual Debtor(s) instructs every debtor to "[c]omplete this schedule by estimating the average monthly expenses of the debtor *and the debtor's family*. Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate." (emphasis added).

good faith requirement in the context of confirming a Chapter 13 plan and to answer any challenge regarding the dedication of disposable income, a Chapter 13 debtor has a duty to demonstrate that the bankruptcy estate has not assumed responsibility for a disproportionate share of the reasonable family expenses.[7] *In re Bush*, 120 B.R. 403, 408 (Bankr. E.D. Tex. 1990) ["While Debtor's nondebtor wife is not obligated to contribute toward Debtor's Chapter 13 Plan, the Court takes notice that Debtor's proposed budget envisions paying all of the couples [sic] joint expenses. The Court does not view this as good faith vis-a-vis the unsecured creditors."].

The Debtor in this case has failed to sustain that burden by a preponderance of the evidence. The evidence demonstrates that Dr. Groves contributes $8,567.41 of net income on a monthly basis to the household, which constitutes 59.8% of the net family income.[8] His non-debtor spouse has committed her net monthly income of $5,771.11[9] to address her debts which require monthly payments totaling $4,267.41, including a monthly payment of $1,150.00 for her BMW automobile, as well as an additional $1,100.00 per month for a 2006 Nissan truck which was purchased during the pendency

---

[7] The *Nahat* court implicitly recognized that, while the Bankruptcy Code cannot be legitimately used to force a non-debtor spouse into Chapter 13, it is possible that a debtor may be forced out of Chapter 13 if such debtor seeks to obtain an inequitable advantage from a spouse's non-participation in the case. *Nahat*, 278 B.R. at 117.

[8] The $8,567.41 arises from his projected gross monthly income, less all taxes and business expenditures.

[9] The $5,771.11 arises from the projected gross monthly income of the non-debtor spouse, less all required withholdings from her status as a salaried employee.

of this case in her name, but admittedly for the Debtor's use, after the Debtor surrendered his 2004 Land Rover Range Rover HSE. She also elects to make a savings deposit of $1,066.67 per month.[10] As a result, the burden to meet the family household expenses of $4,299.10 per month falls almost exclusively upon the Debtor who is required to contribute $3,862.07, or 89.8% of the funds necessary to meet those household expenses. Even if the calculation of their monthly household expenses were supplemented by $800 to account for the non-debtor spouse's acquisition of the new 2006 Nissan truck to supply the transportation needs of the Debtor,[11] the Debtor's $3,862.07 contribution to the household expenses would still constitute 75.7% of the monthly household payments. Under whatever standard one might wish to apply,[12] that is an inequitable apportionment of the household expenses. Assuming that, at the least, each marriage partner should assume responsibility for the payment of household expenses in proportion to the net income contributed to the household by that partner, the Debtor in this case is improperly utilizing property of the bankruptcy estate, which would otherwise be applied to payments

---

[10] Though the non-debtor spouse testified that, in fact, both car payments are satisfied from her monthly savings deduction of $2,166.67, the Debtor's January 5, 2006 budget [Exhibit D] separately accounted for her $1,150 car payment as a "itemized personal expense."

[11] The sum of $800 per month would be sufficient to satisfy an automobile indebtedness of $33,733.99 at a rate of 6.5% over a span of 48 months. Had the Debtor actually chosen to seek court approval to obtain credit for the purchase of a new automobile, it is highly doubtful that the Court would have approved his acquisition of a 2006 automobile at all, or that it would have approved payment terms for that obligation equivalent to those actually acquired by the non-debtor spouse, which would have allowed the Debtor to accelerate the acquisition of equity in an exempt asset at the expense of his unsecured creditors. Thus, the hypothetical $800 per month allowance is a generous allocation.

[12] *See* Robert B. Chapman, *Coverture and Cooperation: the Firm, the Market, and the Substantive Consolidation of Married Debtors*, 17 BANKR. DEV. J. 105, 116-117 n.47-52 (2000).

under the plan, to subsidize the household contribution of his non–debtor spouse to the tune of $812.74 per month.[13] The fact that the Debtor's proposed plan seeks to validate such an allocation precludes any finding that the plan constitutes a reasonable repayment effort by the Debtor in light of the economic realities of his family. This fact also mandates a finding that the Debtor's disproportional contribution to the household budget constitutes a diversion of his disposable income which he is required to apply to payments under his plan. Accordingly, because the Debtor's plan is not proposed in good faith and since the Debtor has failed to dedicate all of his projected disposable income to payments under the plan as required by 11 U.S.C. §1325(b)(1)(B), the Debtor's Fourth Amended Plan cannot be confirmed.

This has been the Debtor's third opportunity to confirm a plan. Upon the second denial of confirmation on November 16, 2005, as per the normal procedures of this Court, an "Order Denying Confirmation of Chapter 13 Plan; Setting 30-Day Dismissal Deadline for Filing New Chapter 13 Plan; and Setting Final Dismissal Deadline Pertaining to Plan Confirmation" was entered which provided, *inter alia*, that in the event the Debtor filed a new Chapter 13 plan and thereafter failed to confirm that new plan upon consideration by this Court under its normal procedures, this Chapter 13 case would be dismissed with prejudice to the Debtor's right to file a subsequent petition under any of the provisions of Title 11, United States Code, for a period of 120 days from the entry of the order of

---

[13] A 50-50 allocation would demand a reduction of $1,312.45 per month by the Debtor.

dismissal without further notice or hearing. Unfortunately, the Debtor elected to forego any litigation of these issues until the last possible moment. Therefore, though he could possibly propose a plan which meets the confirmation requirements, the Debtor has forfeited that opportunity. Accordingly, an order denying confirmation will be entered which is consistent with this opinion and, pursuant to the final dismissal deadline previously issued in this case, the Court will issue a separate order dismissing this case with prejudice for a period of 120 days.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[14] pursuant to FED. R. CIV. P. 52, as incorporated into contested matters in bankruptcy cases by FED. R. BANKR. P. 7052 and 9014.

Signed on 02/10/2006

*Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[14] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.